**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

ROGER COOPER, *as Administrator*
*of the Estate of Ronnie J. Cooper*,

                Plaintiff,

v.                                           CIVIL ACTION NO.  2:22-cv-00194

WEST VIRGINIA DIVISION OF CORRECTIONS
AND REHABILITATION, et al.,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the *Defendants West Virginia Division of Corrections and Rehabilitation and Timothy King's Motion to Dismiss* (Document 7), the *Defendants West Virginia Division of Corrections and Rehabilitation and Timothy King's Memorandum of Law in Support of Motion to Dismiss* (Document 8), the *Plaintiff's Response to West Virginia Division of Corrections and Rehabilitation and Timothy King's Joint Motion to Dismiss* (Document 14), the *Defendants West Virginia Division of Corrections and Rehabilitation and Timothy King's Reply to Plaintiff's Response to Defendants' Motion to Dismiss* (Document 16), and the *Complaint* (Document 1-2).  For the reasons stated herein, the Court finds that the Defendants' motion should be granted.

**FACTUAL ALLEGATIONS**

The Plaintiff, Roger Cooper, as Administrator of the Estate of Ronnie J. Cooper, filed a Complaint against the Defendants in the Circuit Court of Logan County, West Virginia, on January 4, 2022. [1] The Defendants, the West Virginia Division of Corrections and Rehabilitation ("WVDCR") and Superintendent Timothy King, moved to dismiss this action. [2] In his complaint, the Plaintiff raises a number of claims against the defendants and unnamed "Doe" defendants. While the complaint does not contain clearly delineated legal claims associated with each count, the Court construes the complaint to raise the following claims: Count 1 & 3: Wrongful Death; Count 2: Negligence; and Count 4: Failure to Intervene/Deliberate Indifference. In support, the complaint alleges the following.

Ronnie J. Cooper, decedent, was a pretrial detainee in the custody of the WVDCR at Southwestern Regional Jail ("SWRJ") from January 2, 2020 to January 15, 2020. At the time of his admission, he had an extensive cardiac health history and mental health history. At 8:10 p.m. on January 2, 2020, he was placed in "detox housing." He had a psychiatric hospitalization in Highland Hospital prior to his incarceration which was known by SWRJ staff. Cassie Richards-Ward, a licensed psychologist at SWRJ, knew of this and noted it on January 6, 2020. On January 3 and 4, 2020, Mr. Cooper was seen at CAMC Teays Valley and given a health care plan. According to the complaint, SWRJ staff failed to implement the prescribed plan and failed to intervene as his health deteriorated.

---

1 This matter was removed to this Court on April 20, 2022 (Document 1).
2 The Plaintiff has also made allegations against unnamed staff members who worked in the Southwestern Regional Jail where the decedent was housed and who have yet to be identified.

Specifically, throughout his incarceration, Mr. Cooper continually refused his medication "due to the active manifestation of his severe mental illness" and the absence of these medicines contributed to his death. (Document 1-2).  Further, it is alleged that "it was clear to any onlooker the refusal of medication was occurring during [Cooper's] active psychosis yet no staff intervened to address his life-threatening conditions" and intervention would have saved his life. *Id.*

On January 12, 2020, Mr. Cooper was prescribed but did not take Cozaar, Lamictal, Lisinopril, Lopid, Zoloft, and Zyprexa.  On January 13, 2020, Mr. Cooper was prescribed but did not take, Lamictal, Lopid, and Zyprexa.  On January 14, 2020, Mr. Cooper was prescribed but did not take, Cozaar, Lamictal, Lisinopril, Lopid, Zoloft, and Zyprexa.  Then, on January 15, 2020, at approximately 11:05 a.m., Ronnie Cooper was found unresponsive in his cell and was pronounced dead at 12:55 p.m.  The Plaintiff alleges generally that despite being aware of his refusal to take his medication, and his ongoing medical crisis, the Defendants and staff failed to appropriately intervene and provide for his medical care.

## STANDARD OF REVIEW

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted tests the legal sufficiency of a complaint or pleading.  *Francis v. Giacomelli,* 588 F.3d 186, 192 (4th Cir. 2009); *Giarratano v. Johnson,* 521 F.3d 298, 302 (4th Cir. 2008).  Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Additionally, allegations "must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1).  "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."

3

*Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555 (2007)).  In other words, "a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Moreover, "a complaint [will not] suffice if it tenders naked assertions devoid of further factual enhancements." *Iqbal,* 556 U.S. at 678 (*quoting Twombly,* 550 U.S. at 557) (internal quotation marks omitted).

The Court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007).  The Court must also "draw[ ] all reasonable factual inferences from those facts in the plaintiff's favor." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).  However, statements of bare legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim. *Iqbal,* 556 U.S. at 679.  Furthermore, the court need not "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., v. J.D. Assocs. Ltd. P'ship,* 213 F.3d 175, 180 (4th Cir. 2000). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice . . . [because courts] 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 555).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 570).  In other words, this "plausibility standard requires a plaintiff to demonstrate more than 'a sheer possibility that a defendant has acted unlawfully.'" *Francis,* 588 F.3d at 193 (quoting *Twombly,* 550 U.S. at 570).  A plaintiff must, using the complaint, "articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief."

4

*Francis,* 588 F.3d at 193 (quoting *Twombly,* 550 U.S. at 557). "Determining whether a complaint states [on its face] a plausible claim for relief [which can survive a motion to dismiss] will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679.

## DISCUSSION

The Plaintiff appears to raise at least three claims against the Defendants, under both state and federal law. For the reasons stated herein, all claims should be dismissed.

*A. Wrongful Death/Negligence*

In Counts One, Two, and Three, the Plaintiff appears to assert state and common law tort and wrongful death claims. In West Virginia, to maintain an action for wrongful death, a beneficiary must show two specific elements: that a person has died, and that the death was caused by a wrongful act, neglect, or default. *Bradshaw v. Soulsby*, 558 S.E.2d 681, 687 (2001). Because the only wrongful acts plausibly pled rest on theories of negligence, the Court need not analyze the claims separately. Put simply, a successful claim for wrongful death, on these facts, presupposes a successful claim for negligence. There is no dispute that the decedent died. Therefore, the fate of all the state claims hinge on the negligence pleadings.

In the Fourth Circuit, "[i]t is axiomatic that a claim for negligence is a question of state tort law." *Jeffers v. W. Va. Div. of Corr. & Rehab.*, No. 3:18-1447, 2020 U.S. Dist. LEXIS 18760, 2020 WL 521851, at *4 (S.D. W. Va. Jan. 20, 2020) (citing *Wheeling Park Comm'n v. Dattoli*, 237 W. Va. 275, 787 S.E.2d 546, 551 (W. Va. 2016)). Accordingly, West Virginia's qualified immunity standards are also applicable. *Little v. PrimeCare Med. of W. Va., Inc.,* 3:20-684, 2021 U.S. Dist. LEXIS 175519, at *16 (S.D.W. Va. 2021). In West Virginia, "[a] public executive official who is

acting within the scope of his authority. . . is entitled to qualified immunity from personal liability for official acts if the involved conduct did not violate clearly established law of which a reasonable official would have known." *W. Va. Reg'l Jail & Corr. Facility Auth. v. A.B.*, 234 W. Va. 492, 766 S.E.2d 751, 755, Syl. Pt. 5 (W. Va. 2014) (quoting *State v. Chase Sec., Inc.*, 188 W. Va. 356, 424 S.E.2d 591, Syl. (W. Va. 1992)).  State law also does not provide immunity for acts that are "fraudulent, malicious, or otherwise oppressive." *Little*, 2021 U.S. Dis. Lexis 175519, at *16.

Accordingly, an allegation that a public official engaged in simple negligence in a discretionary act is insufficient to overcome established immunity. *See Maston v. Wagner*, 236 W. Va. 488, 781 S.E.2d 936, 948 (W. Va. 2015) ("A public officer is entitled to qualified immunity for discretionary acts even if committed negligently."). Additionally, the West Virginia Supreme Court of Appeals has held that training, supervision, and retention, and other core supervisory roles are within the category of "discretionary" government functions covered by this immunity. *A.B.*, 766 S.E. 2d at 772.

Again, the only discernable common law or state law claim the Plaintiff appears to have pled is negligence.  The Plaintiff has asserted both that medical staff negligently failed to provide adequate medical care and failed to intervene in a clear mental health episode, contributing to the decedent's death.  Accepting these allegations as true, the Plaintiff reasonably has pled negligent conduct on behalf of SWRJ staff and others responsible for the decedent's medical care. However, as stated above, because officers and agents are immune from suits for negligence under the circumstances presented, the claim must be dismissed.  Additionally, the allegations made directly against Defendant King likely fall short of negligence.   The only facts alleged against

6

Superintendent King, individually, are conclusory allegations that he was aware of Mr. Cooper's medical history, and of the failure of the staff to intervene, and that he failed to do anything.

Further, to the extent the Plaintiff sought to allege something greater than negligence, or a violation of some clearly established law or regulation, the complaint falls short. Merely listing an array of state rules and regulations regarding jails and medical care and claiming all have been breached is insufficient to plead a claim of some violation. If, in fact, a clearly established right is presented within the broad list of regulations cited, the Plaintiff has failed to articulate what facts constitute a violation of what right to support a cause of action. In other words, a particularized showing is required. Further, while the Plaintiff may have reason to complain about the type of care provided, the complaint fails to articulate a violation aside from purported negligent care, to which the government agents would be immune as discussed above. Therefore, as written, the complaint fails to allege a state cause of action upon which relief can be granted and these claims should be dismissed.

B. *Deliberate Indifference/Failure to Intervene*

In Count Four, the Plaintiff appears to allege a violation of the decedent's Fourteenth Amendment rights through theories of deliberate indifference, bystander liability and failure to intervene. The vehicle for asserting federal constitutional claims such as this is 42 U.S.C. § 1983. Accordingly, while the Plaintiff fails to cite this statute, the Court will review the claim in light of the construct of § 1983 as the only appropriate method for raising a federal constitutional cause of action.

At the outset, since the claim is a civil action for monetary damages, as stipulated by the Plaintiff in his *Response*, WVDCR and Superintendent King in his official capacity are not proper

parties to an action pursuant to 42 U.S.C § 1983.  The Supreme Court has consistently held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).  Thus, because neither the WVDCR nor Superintendent King, in his official capacity, are "persons" subject to suit, this claim against those Defendants must be dismissed.  To the extent the Plaintiff has attempted to allege a constitutional violation against Defendant King in his individual capacity, the complaint falls short.

"Challenges to conditions of confinement by pretrial detainees are governed by the Fourteenth Amendment." *Little*, 2021 U.S. Dist. LEXIS 175519, *8-9 (citing *Mays v. Sprinkle*, 992 F.3d 295, 300 (4th Cir. 2021).  That stated, the Fourth Circuit has held that "[t]he due process rights of a pretrial detainee are at least as great as the [E]ighth [A]mendment protections available to the convicted prisoner." *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988). Therefore, a pretrial detainee "can make out a violation at least where 'he shows deliberate indifference to serious medical needs under cases interpreting the Eighth Amendment.'" *Mays*, 992 F.3d at 300 (quoting *Estelle v. Gamble,* 429 U.S. 97, 104 (1976)).

To establish a Constitutional violation through deliberate indifference and failure to intervene in a medical context requires "both objectively serious medical condition and subjective knowledge by a prison official of both the 'serious medical condition and the excessive risk posed by the official's action or inaction.'" *Little*, 2021 U.S. Dist. LEXIS 175519, at *13 (citing *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014)).  To establish the subjective requirement, there must be a showing of "subjective recklessness" with respect to a serious medical condition. *See Farmer v. Brennan*, 511 U.S. 825, 839-40 (1994). "True subjective recklessness requires

8

knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997).

Unlike the state law context and as stipulated in the Plaintiff's *Response,* a Plaintiff cannot rely on vicarious liability in a § 1983 action. The United States Supreme Court has explained that "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (citing *Monell v. Dept. of Social Servs.*, 436 U.S. 658, 691 (1978)). Accordingly, allegations against unnamed staffers and others, unrelated to Superintendent King's personal conduct, are not sufficient to support a legal claim against him.  The Plaintiff must rely on alleged acts and omissions of  Defendant, King, himself.

As discussed above, the complaint has failed to state a claim for negligence against Defendant King.  It naturally follows that the Plaintiff has failed to state a claim under the higher standard for deliberate indifference.  The sole allegations directly involving his personal acts and omissions are conclusory statements alleging that he oversaw the staff, knew of the decedent's medical issues, and failed to act. These allegations fall short of the subjective recklessness required to sustain this claim.  Merely stating the elements of a claim without any specificity about how he would have known about the decedent's medical condition or how he failed to act cannot meet the standard required to survive a motion to dismiss.

Therefore, some other theory of liability must be established against Mr. King to sustain a §1983 claim. While *respondeat superior* liability is impermissible under §1983, the Fourth Circuit has made clear that a different theory underlies supervisory liability in §1983 claims.  In *Slakan*, the court reasoned that supervisory liability under §1983 rests on "a recognition that supervisory

9

indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." *Slakan v. Porter*, 737 F.2d 368, 372-73 (4th Cir. 1984). The Fourth Circuit has articulated the three elements to establish supervisory liability under §1983:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994) (citations omitted). While the complaint alleges that Mr. King knew of the decedent's medical issues, it has not alleged that he had actual or constructive knowledge of a course of conduct posing "a pervasive and unreasonable risk" of constitutional injury to the decedent. The complaint fails to articulate, with any specificity, the type of knowledge Mr. King had, the nature of that knowledge, whether there was a history of similar behavior, or what action he, as Superintendent, could have taken to avoid the alleged harm. As discussed above, the alleged behavior does not clearly present an unreasonable risk of constitutional injury, and therefore, the allegations do not establish that he had such an inadequate response that it constituted tacit authorization for any "alleged offensive practice". Further, aside from general statements that he oversaw the staff, it does not indicate what specific inaction on his part created an affirmative causal link to the alleged injury. Because the complaint, as written, does not sufficiently state a claim for supervisory liability, any claim premised on that theory must

also fail.    Therefore, given that the Plaintiff has not alleged sufficient facts to establish any constitutional violation, the claim must be dismissed.[3]

## CONCLUSION

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that the *Defendants West Virginia Division of Corrections and Rehabilitation and Timothy King's Motion to Dismiss* (Document 7) be **GRANTED** and that all federal claims against West Virginia Division of Corrections and Rehabilitation and Timothy King in his official capacity be **DISMISSED WITH PREJUDICE**, and that the Plaintiff's state law claims against the West Virginia Division of Corrections and Rehabilitation and Timothy King, and federal claims against Timothy King in his individual capacity, be **DISMISSED WITHOUT PREJUDICE**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER:    October 18, 2022

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA

---

3 As the Court finds the claim fails due to a failure to allege facts sufficient to constitute a constitutional violation under F.R. Civ. P. 12(b)(6), the Court need not and does not reach the question of whether the Defendants are entitled to qualified immunity on these claims.